**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL BRANDON SELLERS | : | |
| | : | |
| Appellant | : | No. 1779 MDA 2017 |

Appeal from the PCRA Order October 26, 2017
In the Court of Common Pleas of Columbia County Criminal Division at
No(s):  CP-19-CR-0000503-2010

BEFORE:    SHOGAN, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED MARCH 20, 2019**

Appellant Paul Brandon Sellers appeals from the order denying his first petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant claims trial counsel was ineffective for: (1) failing to object during the Commonwealth's opening statement to the jury; (2) failing to object to the court's responses to questions from the jury during deliberations; and (3) introducing evidence of prior sexual abuse of the victim.  We affirm.

The relevant facts and procedural history of this appeal are as follows. On July 1, 2010, Sherry Moroz (Moroz) of the Child Advocacy Center conducted a forensic interview with the ten-year-old victim (Victim).  Officer Kenneth Strish (Officer Strish) of the Berwick Police Department was also present.  During the interview, Victim said that Appellant, his father, sexually

---

[*] Retired Senior Judge assigned to the Superior Court.

abused him on multiple occasions. Victim also alleged that his stepmother, Appellant's wife, participated in the abuse. Later that day, the Commonwealth filed criminal complaints charging Appellant and his wife with various sex offenses.

Appellant and his wife proceeded to a joint trial on September 15, 2011. During the Commonwealth's opening statement to the jury, the prosecutor commented on Moroz and Victim's forensic interview as follows:

> You will hear from three witnesses from the Commonwealth here today. First, you will hear from a woman named Sherry Moroz who works at the Child Advocacy Center of Columbia County and hear how she conducted a forensic interview with [Victim on] July 1 of 2010. You will hear what a forensic interview is, the situation in which that occurs, how she conducts those interviews, as well as her credentials and what she does to ensure those interviews are done correctly.

N.T. Trial, 9/15/11, at 16-17.

At the conclusion of the opening statements, the prosecutor called Moroz as his first witness. Appellant's trial counsel immediately requested a sidebar and objected to testimony from Moroz as irrelevant. Trial counsel noted that Officer Strish could testify that he attended the forensic interview and brought charges against Appellant based upon Victim's statements to Moroz. The court sustained trial counsel's objection and the sidebar ended.

The prosecutor asked the trial court to excuse Moroz, and he called Officer Strish as his first witness. Officer Strish confirmed that he attended Victim's forensic interview. When asked why Victim underwent a forensic interview, Officer Strish testified that Victim's mother (Appellant's ex-wife)

had informed him that Victim made sexual abuse allegations during a counseling session approximately one month earlier. Officer Strish also stated that Moroz conducted the interview, which was recorded on DVD. Officer Strish brought criminal charges against Appellant based upon Victim's interview statements.

The prosecutor also presented Victim, who testified that Appellant performed various sex acts on him. Victim claimed the abuse occurred on a frequent basis when the family was living on Martz Street in Berwick, between 2004 and 2006. Victim said that the abuse stopped after the family moved out of the Martz Street residence.

At the conclusion of Victim's testimony, Appellant testified in his own defense. Appellant asserted that Victim reported being molested in 2006 by another individual, William Houseknecht, who was adjudicated delinquent for his conduct with Victim. Appellant also claimed that he underwent surgery in 2005, which left him unable to commit the sex acts alleged. Finally, Appellant testified that Victim's accusations against him occurred the day after a custody hearing where Appellant sought to obtain greater visitation with Victim.

After the jury commenced deliberations, they submitted the following question to the trial court: "What is involved in the forensic interview? We were told we would get more information and none given." *Id.* at 123. The court responded, "And you got what you are going to get. That was the evidence on that. And, basically, that is what Officer Strish testified to." *Id.* The jury also asked, "Request DVD interview of July 1st interview of [Victim]."

The court responded, "That was not put into evidence. So that is the answer. Okay? Thank you all." ***Id.***

Ultimately, the jury convicted Appellant of two counts each of rape of a child and aggravated indecent assault.[1] On September 27, 2011, Appellant filed motions for arrest of judgment, acquittal, and a new trial, which the trial court denied. On November 28, 2012, the court found Appellant to be a sexually violent predator and sentenced him to an aggregate term of eight to twenty years' imprisonment. This Court affirmed the judgment of sentence on July 19, 2013, and Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court. ***Commonwealth v. Sellers***, 2240 MDA 2012 (Pa. Super. July 19, 2013) (unpublished mem.).

Appellant timely filed a *pro se* PCRA petition on November 7, 2013, raising claims of trial counsel's ineffectiveness. The PCRA court appointed counsel, who filed an amended petition on April 10, 2014. Following multiple continuances, the court conducted an evidentiary hearing on June 19, 2015.

At the hearing, trial counsel testified that he was aware of Moroz prior to trial, because the discovery materials included the transcript and DVD recording of the forensic interview. Trial counsel believed, however, that the Commonwealth would not call Moroz as a witness unless Victim's trial testimony was inconsistent with the statements he made during the interview. Regarding the prosecutor's reference to Moroz in the opening statement, trial

---

[1] 18 Pa.C.S. §§ 3121(c) and 3125(a)(7), respectively.

counsel testified that he was prepared to object to testimony from Moroz for any purpose other than witness rehabilitation. Trial counsel also stated,

> I mean, you know you try not to object during opening statements unless it is just totally out to lunch on what is going on. Because I remember I have to open right after that, too. If I start making a bunch of objections, it turns out . . . they are going to make a bunch of objections.

N.T. PCRA Hr'g, 6/19/15, at 28.

At the conclusion of the hearing, PCRA counsel asked the court to leave the hearing record open. Specifically, PCRA counsel wanted more time to investigate certain witnesses who did not testify at trial. The court granted PCRA counsel's request and left the record open.

On July 20, 2015, Appellant filed a motion requesting funds to hire a private investigator, which the PCRA court granted. On September 28, 2017, Appellant filed a petition to close the record for the PCRA hearing, explaining that his private investigator did not provide a report until April 5, 2017. The report led PCRA counsel to conclude that "no additional relevant testimony is available to be offered on [Appellant's] behalf." Pet. to Close Record, 9/28/17, at 2. The court granted Appellant's petition and closed the record on October 26, 2017. That same day, the court entered an order and opinion denying Appellant's PCRA petition.

Appellant timely filed a notice of appeal on November 20, 2017. On January 2, 2018, new, privately retained counsel entered his appearance on Appellant's behalf. Appellant subsequently filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court

filed a responsive opinion, concluding that trial counsel's failure to object to the references to Moroz and Victim's forensic interview was not "material" to Appellant's conviction. Trial Ct. Op., 2/28/18, at 5.

Appellant now raises three questions on appeal:

1. Was [trial] counsel['s] failure to object, request a curative/cautionary instruction and/or request a mistrial in response to the prosecutor's opening remarks to the jury regarding Sherry Moroz's forensic interview of the victim . . . ineffective and was there a reasonable probability that the outcome of the proceedings would have been different but for counsel's inaction?

2. Was [trial] counsel['s] failure to object, request a more appropriate curative/cautionary instruction and/or request a mistrial to the trial court's instruction to the jury's request for information concerning the forensic interview and the jury's request for the July 1, 2010 DVD forensic interview of [Victim] ineffective and was there a reasonable probability that the outcome of the proceedings would have been different but for counsel's inaction?

3. Was the decision by [trial] counsel to introduce evidence of William Houseknecht's sexual abuse of [Victim] and his admission and adjudication for the abuse in Juvenile Court ineffective and was there a reasonable probability that the outcome of the proceedings would have been different but for counsel's action?

Appellant's Brief at 4.[2]

_____

[2] Although Appellant presents three distinct questions on appeal, the argument section of Appellant's brief is not divided into three separate parts. *See* Pa.R.A.P. 2119(a) (stating: "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). Nevertheless, Appellant's failure to comply with Rule 2119(a) does not preclude this Court from reviewing the questions presented.

Appellant's first two issues are related, and we address them together. Appellant emphasizes that the Commonwealth's opening statement to the jury referred to Moroz and Victim's forensic interview. *Id.* at 11. Appellant complains that trial counsel did not object to this portion of the opening statement. *Id.* Further, "The jury was not instructed to disregard the Commonwealth's remarks, which were not stricken from the record by the trial court." *Id.* at 12.

Appellant acknowledges that the jury subsequently heard about the forensic interview through Officer Strish's testimony. *Id.* Appellant insists, however, that the Commonwealth's inability to provide testimony from Moroz to explain the forensic interview process sidetracked the jury during deliberations, as evidenced by the questions it submitted to the trial court. *Id.* Appellant maintains the court made the situation worse, because its responses to the jury's questions were "unartful and inappropriate." *Id.*

Appellant argues, "The jury is naturally going to believe forensic evidence has scientific qualities that make the evidence more trustworthy." *Id.* at 13. A forensic interview, however, "is nothing more than a trained interviewer making the young victim as comfortable as possible and attempting to get the victim to speak." *Id.* In light of the fact that Moroz did not ultimately testify, Appellant concludes that trial counsel should have objected and requested a mistrial based upon the references to Moroz and forensic interviewing. *Id.* at 12, 14.

- 7 -

Our review the dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted). We review the PCRA court's legal conclusions *de novo*. *See Miller*, 102 A.3d at 992. This Court "may affirm a decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's actions, even if we rely on a different basis." *Commonwealth v. Moser*, 999 A.2d 602, 606 n.5 (Pa. Super. 2010) (citation omitted).

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffectiveness, a petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). A petitioner must establish (1) that the underlying claim has arguable merit; (2) that counsel lacked a reasonable basis for his action or inaction; and (3) but for the act or omission in question, the outcome of the proceedings would have been different. *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). "A claim of ineffectiveness may be denied by a showing that the

petitioner's evidence fails to meet any of these prongs." ***Id.*** (citations omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.] Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa. Super. 2017) (citations and quotation marks omitted).

Regarding opening statements,

> remarks in a prosecutor's opening statement must be fair deductions from the evidence that he or she in good faith **plans to introduce** and not mere assertions designed to inflame the passions of the jury. The prosecution is not required to conclusively prove all statements made during the opening argument. If the prosecutor has a good faith and reasonable basis to believe that a certain fact will be established, he or she may properly refer to it during the opening argument. Even if an opening argument is somehow improper, relief will be granted only where the unavoidable effect is to so prejudice the finders of fact as to render them incapable of objective judgment.

***Commonwealth v. Brown***, 711 A.2d 444, 456 (Pa. 1998) (citations omitted) (emphasis added).

Additionally, "[q]uestions from the jury and requests to be recharged are common and most certainly do not create a presumption of jury confusion." ***Commonwealth v. Weaver***, 768 A.2d 331, 335 (Pa. Super. 2001) (citation omitted).

> Where a jury submits on its own motion a question to the court indicating confusion or a request for clarification, the court may

properly clarify the jury's doubt or confusion. The feasibility and scope of any supplemental instructions to the jury is a matter within the discretion of the trial court.

*Commonwealth v. Kidd*, 380 A.2d 416, 419 (Pa. Super. 1977) (citations omitted).

Instantly, the prosecutor's opening statement referenced Moroz and the forensic interview, because the prosecutor planned to call Moroz as his first witness. The prosecutor subsequently called Moroz, but trial counsel raised a successful objection. Because the prosecutor's opening statement amounted to a commentary on evidence that he in good faith planned to introduce, the opening statement was proper and an objection by trial counsel would have been unwarranted at that point.[3] *See Brown*, 711 A.2d at 456. As this issue is meritless, we cannot deem trial counsel ineffective for failing to object to the prosecutor's opening statement. *See Smith*, 167 A.3d at 788.

After the jury commenced deliberations, it submitted questions to the trial court about the forensic interview. Although the court's answers were brief, they adequately reflected the state of the record following Officer Strish's testimony. Therefore, the court properly resolved the jury's questions. *See Kidd*, 380 A.2d at 419. To the extent Appellant relies on the jury's questions to demonstrate some sort of anomaly necessitating a new

---

[3] The trial court also provided the following instruction to the jury: "Now, statements by counsel do not constitute evidence." N.T. Trial at 10. We can presume the jury followed this instruction and did not treat the prosecutor's comments as substantive evidence. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1147 (Pa. 2011) (reiterating that a jury is presumed to have followed the court's instructions).

- 10 -

trial, such questions do not create a presumption of jury confusion. **See Weaver**, 768 A.2d at 335. Again, we cannot deem trial counsel ineffective for failing to object to the court's accurate answers to the jury's questions. **See Smith**, 167 A.3d at 788.

In his third issue, Appellant insists that trial counsel was ineffective for introducing evidence that another individual, William Houseknecht, was adjudicated delinquent for sexually abusing Victim. Significantly, Appellant did not raise this issue in the PCRA court, and he did not include it in his Rule 1925(b) statement. **See Commonwealth v. Rainey**, 928 A.2d 215, 226 (Pa. 2007) (stating that issues not raised in the PCRA petition cannot be considered for the first time on appeal); **Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (holding that issues not raised in a Rule 1925(b) statement will be deemed waived). As such, Appellant's third issue is waived. Accordingly, we affirm the order of the PCRA court, albeit on a different basis. **See Moser**, 999 A.2d at 606 n.5.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/20/2019

- 11 -